IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


| | | |
|---|---|---|
| ANGELA SPANN, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|    v. | ) | 1:04cv969-T |
| | ) | (WO) |
| DYNCORP TECHNICAL SERVICES, | ) | |
| LLC, and ARMY FLEET | ) | |
| SUPPORT, LLC, | ) | |
| | ) | |
|    Defendants. | ) | |

OPINION

Plaintiff Angela Spann filed this employment lawsuit
charging that defendants DynCorp Technical Services, LLC
and Army Fleet Support, LLC ("AFS") retaliated against
her in violation of Title VII of the Civil Rights Act of
1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through
2000e-17.[1] Jurisdiction is proper pursuant to 42 U.S.C.A.
§ 2000e-5(f)(3).

_____

1.  Spann asserts other claims against DynCorp.
These other claims are not at issue in this opinion.

This case is before the court on AFS's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts

showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Because Spann is the nonmoving party, the court presents the following facts in the light most favorable to her.  In February 2001, Spann began working for DynCorp as an aircraft mechanic.  She was immediately subjected to a hostile work environment, including sexual

3

advances and sexual and demeaning comments from co-workers.  In July of 2003, Spann was transferred to Knox field at Fort Rucker, Alabama.[2]  She applied for and was promoted to the position of technical inspector.[3]

In September 2003, AFS was awarded the government contract to perform military support services at Fort Rucker effective December 1, 2003.  AFS implemented a policy to hire its future employees from DynCorp's incumbent workforce.[4]

Spann was offered a position with AFS.[5]  The offer-of-employment letter stated, in part, that, "We are pleased to offer you this employment opportunity, which will

_____

2.  Defendant DynCorp's evidentiary submission in support of partial motion for summary judgment (Doc. No. 39), Spann deposition ("Spann deposition") (exhibit 2 part 1, p. 188).

3.  Id., pp. 186, 187.

4.  Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), Grosvenor deposition ("Grosvenor deposition") (Doc. No. 48-4, pp. 11, 12).

5.  Id., Jacobs deposition ("Jacobs deposition") (Doc. No. 48-2, p. 18), employment offer letter ("employment offer letter") (Doc. No. 48-5).

become effective at 12:00 a.m. on December 1, 2003." The letter also stated that, "If you accept this offer, please ... initial or sign where requested, and bring the package with you to the AFS Application Office. ... You must return your completed documents on the following date: November 12, 2003."[6]

On or about November 9, 2003, Spann returned her AFS employment paperwork to Susan Jacobs, a member of the human resources team employed by a third entity separate from AFS and DynCorp to facilitate the transition from DynCorp's contract at Fort Rucker to that of AFS.

The AFS paperwork included a "minimum conditions for hire" form, which stated that, "All offers of employment are contingent upon ... your status as an employee in <u>good standing</u> with the incumbent contractor DynCorp" as well "upon the successful completion of your pre-employment background check (if applicable), pre-

---

6. <u>Id</u>.

employment drug-screening (as applicable)."[7]   No background check or drug screening was ever conducted by AFS for any incumbent employee.[8]   The minimum conditions for hire form did not state a date or time period during which the incumbent employee had to be in good standing for the offer to remain valid.

On November 9, 2003, Spann met with Jacobs and related the episodes of harassment she allegedly suffered at DynCorp; Jacobs then contacted Tom Green, the AFS General Manager.[9]   The next day, Green met with Jacobs, Spann, and Spann's friend and co-worker LaRhonda McKay, who also stated that she had suffered harassment.[10] Although Green encouraged Spann to file a written statement with DynCorp; he then called Tom Walker,

---

7. Exhibit A to AFS's motion to substitute affidavit of Tom Green (Doc. No. 41), minimum conditions for hire letter (Doc. No. 41-2) (emphasis added).

8. Jacobs deposition, p. 13; Grosvenor deposition, p. 16.

9. Jacobs deposition, pp 20, 21.

10. Spann deposition, p. 48.

6

DynCorp's general manager, to alert Walker to Spann's allegations.[11]   Although at that time, Spann expressed fear that she would be fired for speaking out,[12] she gave a written statement to DynCorp on November 14, 2003, asserting that she had suffered sexual harassment. DynCorp subsequently investigated Spann's allegations.

On November 24, 2003, DynCorp advised Spann that she was being terminated,[13] and two days later, on November 26, AFS notified Spann that her offer of employment was being rescinded because she was no longer an employee in good standing with DynCorp.[14]   AFS formally took over the Fort Rucker contract on December 1.

On December 18, 2003, in order to avoid the costs of arbitration and the union grievance process, DynCorp

---

11. Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), Green deposition (Doc. No. 48-3, p. 18).

12. Id., Jacob's notes from meeting on October 10, 2003, (Exhibit two to Jacobs deposition, Doc. No. 48-2).

13. Id., termination letter, (Doc. No. 48-7).

14. Id., AFS rescission letter (Doc. No. 48-8).

rescinded its November 24 termination of Spann, with the result that her work history file reflected a termination date of November 30 due to "loss of contract." Spann did not contact AFS after learning of this decision, and AFS did not re-extend its original offer of employment to Spann.[15]

On May 13, 2004, Spann filed a charge of retaliation against ASF with the Equal Employment Opportunity Commission ("EEOC").[16] On May 18, AFS replied to the EEOC charge with a letter stating that the "implied definition" of 'incumbent workforce' was limited to active employees on DynCorp's payroll as of November 30, 2003.[17] AFS also asserted in this letter that it had no knowledge of Spann's complaint of sexual harassment

---

15. Spann deposition, pp. 308, 209.

16. Defendant DynCorp's evidentiary submission in support of partial motion for summary judgment (Doc. No. 39), EEOC AFS Charge (Doc. No. 39-5, exhibit 21 to Spann deposition).

17. Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), AFS reply to EEOC charge (Doc. No. 48-5, p. 2).

8

against DynCorp.[18]  The EEOC issued a right-to-sue notice
against AFS on August 26, 2004.[19]

Spann filed this lawsuit on October 13, 2004.


### III.  DISCUSSION

It is illegal under Title VII for an employer to
retaliate against an employee "because [the employee] has
opposed any practice made an unlawful employment practice
... or because he has made a charge, testified, assisted,
or participated in any manner in an investigation,
proceeding, or hearing under this subchapter [of Title
VII]." 42 U.S.C. § 2000e-3(a).  This case is governed by
the familiar burden-shifting analysis of McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the
McDonnell Douglas approach, the employee has the initial
burden of establishing a prima-facie case of unlawful

---

18. Id., pp. 3, 5.

19. Defendant DynCorp's evidentiary submission in
support of partial motion for summary judgment (Doc. No.
39), EEOC right-to-sue notices for DynCorp and AFS (Doc.
No. 39-5, exhibits 22 and 24 to Spann deposition).

employment retaliation by a preponderance of the evidence. Id. at 802; Young v. General Food Corp., 840 F.2d 825, 828 (11th Cir. 1988).

If the employee establishes a prima-facie case, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-retaliatory reasons for its employment action. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. See, e.g., Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 247, 253-55, 258 (1981); McDonnell Douglas, 411 U.S. at 802.

Once the employer satisfies this burden of production, "the presumption of discrimination is eliminated and 'the [employee] has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude

that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman, 229 F.3d at 1024 (citations omitted).  The employee may meet this burden by persuading the court that a retaliatory reason more than likely motivated the defendant or by demonstrating that the proffered reason for the employment decision is not worthy of belief. Burdine, 450 U.S. at 256; see also Young, 840 F.2d at 828.

To establish a prima-facie case of retaliation under Title VII, Spann must show (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action.  Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).  The court will assume that Spann has established a prima-facie case.

Also, it is without question that AFS has met its burden of coming forward with a legitimate, non-retaliatory reason for the challenged action, Chapman,

229 F.3d at 1024: as discussed above, AFS asserts that it withdrew its offer to Spann because she was no longer an employee in good standing with DynCorp as of November 30, 2003, and that such status was necessary for a successful transition into the maintenance contract at Fort Rucker.

Therefore, the critical question is whether Spann has produced, or pointed to, sufficient evidence that AFS's reason is a pretext for retaliation. Spann has pointed to four circumstances that she contends support her argument that AFS's proffered explanation is unworthy of credence and pretextual: (1) AFS's failure to rely on its own hiring criteria; (2) AFS's position before the EEOC; (3) temporal proximity; and (4) AFS's failure to reinstate Spann's offer. Each circumstance is discussed in turn.

1. <u>AFS's Failure to Rely on Hiring Criteria</u>: Spann maintains the because she was an employee in good standing when AFS made its offer and she accepted it, AFS was obligated to honor its offer and her acceptance.

Spann argues that there is nothing in AFS's hiring conditions that required that she be in good standing with DynCorp on November 30; the form listing the minimum conditions for hire did not include a date or time period during which a DynCorp employee was required to be in good standing.

However, it is self evident from AFS's good-standing requirement that the company did not want to be saddled with an employee whom DynCorp itself had determined, for whatever reason or reasons, valid or invalid, was not worthy of continued employment; AFS simply did want the headache of making individualized determinations about employees not in good standing at DynCorp.  And it logically follows that AFS did not want a terminated DynCorp employee irrespective of when the employee was terminated; whether the employee was terminated two days, two weeks, or two years before December 1 is a distinction without significance.  Therefore, AFS's conclusion that the employee must be in good standing on

13

December 1, that is, when the employee begins work with AFS, is not only a reasonable reading of its good-faith requirement, it is the only reasonable one. Spann was not such an employee.[20]

2. <u>AFS's Position before the EEOC</u>: In its response to the EEOC charge filed by Spann, AFS asserted that it had no knowledge of Spann's complaints of sexual harassment at DynCorp, and therefore could not have acted in retaliation based on those complaints. AFS has subsequently admitted that it did, in fact, have knowledge of Spann's complaints when it rescinded its employment offer.[21] Spann argues that this inconsistency supports her contention that AFS's reason for her non-employment is pretextual.

_____

20. In further support of its position that Spann's retaliation contention is wholly meritless, AFS emphasizes that it was its own employee who brought Spann's complaint to the attention of DynCorp management.

21. Brief in support of defendant AFS's motion for summary judgment (Doc. No. 36, p. 14). <u>See also</u> Grosvenor deposition, p. 26.

14

However, AFS's actual reason for rescinding the offer has remained consistent: Spann was no longer an employee in good standing.   Admittedly, whether AFS knew of Spann's complaints of discrimination at the time of the rescission is not an insignificant fact, as such knowledge is a critical element of the prima-facie case for retaliation; but the inconsistency does not touch on AFS's proffered non-retaliatory reason, which has not changed, and does not undermine the validity of that reason in the absence of other evidence.

3. <u>Temporal Proximity</u>:   The temporal proximity between Spann's complaints and AFS's rescission suggests the possibility of some connection between the two. However, in the absence of other evidence of retaliation, "temporal proximity does not amount to more than a scintilla of evidence of retaliation," <u>Padron v. BellSouth Telecomms., Inc.</u>, 196 F. Supp. 2d 1250, 1257 (S.D. Fla. 2002) (finding temporal proximity insufficient to suggest pretext when offered as the only evidence

15

against an employer's strongly supported legitimate reason), especially when the proffered reason for the employment decision is not only logical but fully supported by the circumstances.

4. <u>AFS's Failure to Reinstate Spann</u>: On December 3, 2003, Spann's union sent a letter to AFS informing it that her termination from DynCorp had been grieved and requesting Spann's reinstatement at AFS should she prevail in arbitration.[22] Subsequently, and after AFS had already taken over the contract at Fort Rucker, DynCorp rescinded its decision to terminate Spann, thereby obviating the need for arbitration. It is undisputed that Spann never contacted AFS or applied for a job after learning of DynCorp's decision.[23] The union letter contained a conditional request that Spann be reinstated pending the outcome of arbitration, and cannot be

_____

22. Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), Union letter (Doc. No. 48-9, p. 2).

23. Spann deposition, pp. 308, 309.

16

considered an application for employment.  AFS was under no obligation to seek out Spann and offer her employment after learning of DynCorp's decision.  Its failure to do so is not evidence that its original rescission of her offer was retaliatory.

Because Spann has failed to show that AFS's reason for her non-employment is pretextual for retaliation, AFS is entitled to summary judgment.[24]

An appropriate judgment will be entered.

Done, this the 1st day of November, 2005.

                           /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE

---

24.  The court need not reach the interesting question of whether Title VII prohibits an employer from retaliating against an employee because of the employee's complaints made to another, prior employer about the prior employer's allegedly prohibited conduct.