IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


| | | |
|---|---|---|
| ANGELA SPANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:04cv969-T |
| | ) | (WO) |
| DYNCORP TECHNICAL SERVICES, | ) | |
| LLC, and ARMY FLEET | ) | |
| SUPPORT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |


ORDER

Plaintiff Angela Spann filed this lawsuit against

defendant DynCorp Technical Services, LLC, claiming that,

while working for DynCorp as an aircraft mechanic and,

subsequently, as a technical aircraft inspector, she was

subjected to sex-based discrimination and unlawful

retaliation in violation of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e

through 2000e-17.  Spann also asserts state-law claims

that DynCorp negligently and wantonly hired, supervised,

trained and retained employees engaged in illegal discriminatory conduct, and that DynCorp invaded her privacy.

Jurisdiction over the federal claims is proper pursuant to 28 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), and 42 U.S.C.A. § 2000e-5(f)(3) (Title VII). Supplemental jurisdiction over the state-law claims is proper pursuant to 28 U.S.C.A. § 1367.

This case is before the court on DynCorp's motion for partial summary judgment. For the reasons that follow, the motion will be denied.[1]

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

_____

1. With an opinion and judgment entered on November 1, 2005, the court granted summary judgment in favor of co-defendant Army Fleet Support, LLC.

2

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-

3

moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II.  BACKGROUND

In its motion for partial summary judgment, DynCorp does not dispute the factual allegations of discriminatory and retaliatory treatment enumerated in Spann's complaint; rather, DynCorp asserts that Spann's claims for monetary relief must be dismissed under the doctrine of 'judicial estoppel' because Spann failed to disclose her claims against DynCorp to the bankruptcy court that had confirmed her Chapter 13 bankruptcy plan. The chronology of events leading up to this lawsuit, presented in the light most favorable to Spann, is as follows.

<u>February 2001</u>: Spann began working for DynCorp as an aircraft mechanic.  She was immediately subjected to a hostile work environment, including sexual advances and

4

sexual and demeaning comments from co-workers.
Specifically, DynCorp employee Larry Howell propositioned
her.[2]  Later in 2001, another DynCorp employee, Ben Key,
verbally and physically harassed her in a sexual way.
All these actions went unpunished when brought to the
attention of supervisors.[3]

June 23, 2003: Spann filed a Chapter 13 bankruptcy
petition.[4]

July 2003: Spann was transferred to Knox field at
Fort Rucker, Alabama, where DynCorp employee Steve Dublar
was the fleet manager.[5]  Dublar made sexually offensive
remarks and overtures to her on an almost daily basis

---

2.  Defendant DynCorp's evidentiary submission in
support of partial motion for summary judgment (Doc. No.
39), Spann deposition ("Spann deposition") (exhibit 2
part 1, pp. 155, 156).

3.  Id., pp. 171 - 173.

4.  Plaintiff's evidentiary submission in support of
brief in opposition to motions for summary judgment (Doc.
No. 48), docket for U.S. Bankruptcy Court, Middle
District of Alabama (Dothan) bankruptcy petition #:03-
11430 ("bankruptcy docket") (Doc. No. 48-10).

5.  Spann deposition, p. 188.

after her transfer through the date of her termination. In addition, the men of the crew to which she was assigned conspired to prevent her from successfully doing her job.

Later, Spann applied for and was promoted to the position of technical inspector.[6] As the first African-American woman to hold the position of technical inspector in the company, she was continually thwarted by employees whose work it was her duty to inspect, and she was threatened with physical violence by one such employee.[7]

September 8, 2003: Spann's Chapter 13 bankruptcy plan was confirmed, and she filed an amended schedule F adding unsecured creditors.[8] Around the same time, DynCorp learned that, effective December 1, 2003, Army Fleet Support, LLC ("AFS") would take over the government

_____

6.  Id., pp. 186, 187.

7.  Id., pp. 234-240).

8.  Bankruptcy docket.

6

contract to perform military support services at Fort Rucker. AFS committed to staff its workforce from DynCorp's incumbent employees in order to fulfill its contract.[9] Spann was subsequently offered a position with AFS.[10]

    <u>November 9 and 10, 2003</u>: On November 9, 2003, Spann returned her AFS employment paperwork to Susan Jacobs, a member of the human resources team employed by a third entity tasked with facilitating the transition from DynCorp's contract at Fort Rucker to AFS's contract. While meeting with Jacobs, Spann related the episodes of harassment she had suffered at DynCorp. Jacobs contacted Tom Green, the AFS General Manager, and, the next day, Green met with Jacobs and Spann.[11] Green encouraged Spann to file a written statement with her employer, and he

---

    9. Defendant AFS's brief in support of motion for summary judgment (Doc. No. 36, p. 2).

    10. Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), Jacobs deposition (Doc. No. 48-2, p. 18).

    11. <u>Id</u>., pp. 20, 21.

then called Tom Walker, general manager at DynCorp, to alert Walker to Spann's allegations.[12]  Spann expressed fear that she would be fired for speaking out.

November 14, 2003: Spann gave a written statement to DynCorp asserting that she had suffered sexual harassment.  DynCorp subsequently investigated Spann's allegations.

November 16, 2003: Spann took a medical leave of absence.[13]

November 24, 2003: DynCorp advised Spann that she was being terminated, noting in the letter of termination that "[t]he statements of a majority of the witnesses [interviewed in the sexual harassment investigation] contradicted what you had stated, and in fact indicated

---

12. Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), Green deposition (Doc. No. 48-3, p. 18).

13. Spann deposition, pp. 254-256.

that you have subjected other employees to repeated sexual harassment, both verbal and physical."[14]

November 26, 2003: AFS notified Spann that its offer to employ her was being rescinded because she was no longer an employee in 'good standing' with DynCorp.[15]

December 1, 2003: AFS formally took over the Fort Rucker contract.

December 18, 2003:  In order to avoid the costs of arbitration and the union grievance process, DynCorp rescinded its termination of Spann, with the result that her work-history file reflected a termination date of November 30 due to "loss of contract."  AFS did not re-extend its original offer of employment to Spann.

---

14. Plaintiff's evidentiary submission in support of brief in opposition to motions for summary judgment (Doc. No. 48), termination letter (Doc. No. 48-7).

15. Id., AFS letter (Doc. No. 48-8).  There is a factual dispute--not relevant to the issues decided here--as to whether Spann had to be an employee in good standing with DynCorp on November 30, 2003, to remain eligible for employment with AFS.

9

March 1, 2004: Spann filed a charge of discrimination against DynCorp with the Equal Employment Opportunity Commission ("EEOC").[16]

May 17, 2004: Spann's bankruptcy case was 'dismissed' pursuant to 11 U.S.C.A. § 1307; Spann, therefore, did not receive a 'discharge' of her Chapter 13 case pursuant to 11 U.S.C.A. § 1328.

August 16, 2004: The EEOC issued a right-to-sue notice to Spann.[17]

October 13, 2004: Spann filed this lawsuit charging DynCorp with sexual harassment as well as retaliatory and sexually discriminatory termination of her employment.

---

16. Defendant DynCorp's evidentiary submission in support of partial motion for summary judgment (Doc. No. 39), EEOC DynCorp Charge ("EEOC DynCorp charge") (Doc. No. 39-4, exhibit 20 to Spann deposition).

17. Id., EEOC right-to-sue notice for DynCorp (Doc. No. 39-5, exhibit 22 to Spann deposition).

10

### III. DISCUSSION

In its motion for partial summary judgment, DynCorp advances a single argument: the doctrine of 'judicial estoppel' should bar monetary relief in this case because Spann never disclosed to the bankruptcy court her claims against DynCorp.

Judicial estoppel is an equitable doctrine, invoked at the court's discretion, under which a party is precluded from asserting a claim in a legal proceeding inconsistent with a claim made in a previous proceeding. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Nevertheless, the doctrine "ought to be applied with caution 'because of the harsh results attendant with precluding a party from asserting a position that would normally be available to

11

the party.'" <u>Sumner v. Michelin N. Am.</u>, 966 F.Supp. 1567, 1578 (M.D. Ala.) (Thompson, J.) (quoting <u>Lowery v. Stovall</u>, 92 F.3d 219, 224 (4th Cir. 1996).

While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," <u>New Hampshire</u>, 532 U.S. at 750, the Eleventh Circuit Court of Appeals considers two primary factors in applying the doctrine to a particular case. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." <u>Burnes</u>, 291 F.3d at 1285 (quoting <u>Salomon Smith Barney, Inc. V. Harvey</u>, 260 F.3d 1302, 1308 (11th Cir. 2001)).  Therefore, judicial estoppel may be applied only in situations involving intentional manipulation of the courts, not when the litigant's contradictory positions are the "product of inadvertence or mistake." <u>Burnes</u>, 291 F.3d at 1287

(quoting <u>Matter of Cassidy</u>, 892 F.2d 637, 642 (7th Cir. 1990)).   Judicial   estoppel   "looks   toward   cold manipulation."   <u>Johnson Service Co. v. Transamerica Ins. Co.</u>, 485 F.2d 164, 175 (5th Cir 1973)). The "deliberate and intentional manipulation" of the courts required before judicial estoppel may properly be invoked can be inferred from the record.   <u>Burnes</u>, 291 F.3d at 1287.

In bankruptcy, a debtor has a duty to disclose all potential assets and must amend her financial statements if   circumstances   change.   11.U.S.C.A.   §   521(1). Potential assets may include "contingent, dependant or conditional" claims, and a debtor must disclose them if she has "enough information prior to confirmation to suggest that [she] may have a possible cause of action." <u>Youngblood Group v. Lufkin Fed. Sav. And Loan Ass'n</u>, 932 F.Supp 859, 867 (E.D. Texas 1996) (Heartfield, J.) (internal  citations  omitted).   Such  claims  include "litigation which has the potential of arising in a non-bankruptcy context."   <u>Id</u>. at 868.

Spann made no representation about potential federal and state employment claims when she filed her bankruptcy petition in June 2003. DynCorp correctly points out that Spann's EEOC charge alleges that she suffered sexual harassment from supervisor Steve Dublar beginning around March 2003, and that her lawsuit alleges earlier instances of sexual harassment and discrimination.[18] DynCorp asserts that, because these events occurred before the filing of her bankruptcy petition, the entirety of Spann's monetary claims must be barred.

This argument fails for a number of reasons. First, Spann's termination from DynCorp occurred in November 2003, after her initial bankruptcy filing and after her Chapter 13 plan was confirmed. It would have been impossible for Spann to have included in her bankruptcy filings claims based on an event that had not yet occurred. Moreover, the bulk of the sexual harassment she alleges occurred after her transfer to Knox field in

---

18. EEOC DynCorp charge.

14

July 2003, and thus after the filing of her bankruptcy petition.

But more importantly, as stated, there must be deliberate and intentional manipulation of the judicial process before judicial estoppel can be applied to bar relief; divergent or different positions that are the product of inadvertence or mistake are not enough. Whether the divergent positions are intentional or inadvertent depends, obviously, on the litigant's intent or motive, if any, behind the divergence; and, of course, absent direct evidence of intent, the first place a court should look to see whether the litigant had the intent or motive to assert divergent positions is to the records of the cases at issue.

If the records reflect that the litigant received, or could have received, a benefit from the divergent positions, then there could be circumstantial evidence of intentional manipulation. But if the records are devoid of any benefit, real or hopeful, to the litigant from the

divergent positions, then that absence would be strong circumstantial evidence that the divergent positions are the product of accident or mistake, not intentional manipulation.  One would be hard pressed to say that a litigant would do something for which she would receive no benefit.[19]

Applying these common-sense principles, the court concludes that, even if the incidents of discrimination and retaliation, including those that occurred before June 2003, were sufficient in scope and nature to constitute a contingent or conditional claim that Spann should have disclosed at the moment of filing her bankruptcy petition or later, Spann's failure to do so was not intentional or deliberate, for Spann derived no benefit from the failure.  She derived no benefit while her bankruptcy petition was pending, and she derived no

_____

19. The court is reluctant to generalize about human nature and say that the absence of a benefit would be dispositive evidence of no intent to manipulate, for a litigant might want to make a mockery of the judicial process for spite alone.

benefit from its dismissal, for her debts were not
discharged. Without a benefit to be gained, Spann had no
motive to conceal her federal and state claims.

This approach of looking to whether the litigant
received a benefit from her divergent positions is
consistent with that used in other cases where courts
were called upon to determine whether to apply judicial
estoppel. For example, in Burnes v. Pemco Aeroplex,
Inc., where the Eleventh Circuit affirmed a district
court's application of judicial estoppel to bar an
employee's claims for monetary relief in an employment
discrimination suit when those claims were not disclosed
in bankruptcy proceedings, the chronology was as follows:
in July 1997, plaintiff filed for Chapter 13 relief; six
months later, in January 1998, he filed an EEOC charge of
discrimination against his employer; in December 1999,
plaintiff filed his employment discrimination suit; in
October 2000, he requested that his Chapter 13 petition
be converted to a Chapter 7 case, the Bankruptcy Court

17

ordered him to file amended schedules, and plaintiff filed schedules and certified them as true and accurate, but failed to report the lawsuit that had then been pending for over eleven months; and on January 23, 2001, plaintiff received a "no asset" complete discharge of his debts.  Burnes, 291 F.3d at 1284.

The Burnes plaintiff received the benefit of a conversion to Chapter 7 followed by a complete discharge of his debts long after he filed a lawsuit claiming millions of dollars in damages, without ever revealing these claims to his creditors or to the bankruptcy court. Id. at 1288.  These facts supported the court's finding that plaintiff, because of the great benefit he derived, possessed the requisite intent to mislead the bankruptcy court (to the detriment of his creditors) such that judicial estoppel should be applied to the monetary claims potion of his discrimination suit.[20]  Id. at 1288.

_____

20. The court found that judicial estoppel did not bar a claim for injunctive relief, because "[plaintiff's] undisclosed claim for injunctive relief offered nothing of value to the estate," and therefore would not have

18

Similarly, in <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197 (5th Cir. 1999), the Fifth Circuit Court of Appeals reversed determinations by a bankruptcy court and a district court that plaintiff's failure to disclose known tort claims over the course of a bankruptcy proceeding was "inadvertent." Applying judicial estoppel, the court found that plaintiff took inconsistent positions by omitting a potential tort claim from its bankruptcy schedules; that the bankruptcy court relied on that representation; and that the representation was not inadvertent because plaintiff "knew of the facts giving rise to its inconsistent positions, and had a motive to conceal the claims." <u>Coastal Plains</u>, 179 F.3d at 212. Plaintiff filed a Chapter 11 bankruptcy petition in April 1986, and shortly thereafter initiated a tort claim against Browning Manufacturing, plaintiff's largest unsecured creditor.   <u>Id</u>. at 202.   In June 1986,

_____

been important to the bankruptcy court in determining the outcome of his bankruptcy. <u>Burnes</u>, 291 F.3d at 1288, 1289. Similarly, DynCorp does not assert that Spann's non-monetary claims should be judicially estopped.

plaintiffs's CEO signed sworn bankruptcy schedules without mentioning the that, at the time, he believed plaintiff had tort claims of up to $10 million against Browning. In September 1986, the automatic stay was lifted, plaintiff's assets went into foreclosure, and an auction was subsequently held. Id. at 203.

Meanwhile, plaintiff's former CEO formed a new company, and all of plaintiff's employees and customers became the employees and customers of the new company. The new company then purchased plaintiff's assets from the auction buyer at a great discount in February 1987, including the previously undisclosed potential cause of action. Id. In April 1987, plaintiff's Chapter 11 reorganization was converted into a Chapter 7 liquidation, and the bankruptcy case was closed in February 1998. In October 1988, the new company decided to pursue the tort claim against Browning that had remained dormant for two and a half years, and was substituted as plaintiff. In 1996 (ten years after the

20

original claim), a jury in federal district court awarded the new company over $13 million, reduced to a final judgment of $3.6 million plus $1.6 million in attorney's fees.  Id. at 204.

The Coastal Plains plaintiff avoided paying debts by filing bankruptcy without disclosing claims that were then pending.  The company's CEO formed a new company, purchased all assets at bargain prices, including the undisclosed claims, and then sued on those undisclosed claims and recovered a windfall.  Plaintiff's plan could be characterized as "[c]onceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights."  Id. at 213 (quoting Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir.), cert. denied, 510 U.S. 931 (1993)).

In no way can Spann's actions be compared to those of the plaintiffs in Burnes or Coastal Plains.  As stated, Spann dismissed her bankruptcy case after the alleged

discriminatory and retaliatory actions that gave rise to her EEOC charge took place and before she filed her lawsuit.  Moreover, in contrast to the <u>Burnes</u> and <u>Coastal Plains</u> plaintiffs, who failed to reveal existing claims even as their debts were discharged or otherwise relieved, Spann obtained no relief or benefit through bankruptcy before filing her lawsuit in this court.

Spann's situation is comparable, rather, to that of the plaintiff in <u>In re Baldwin</u>, 307 B.R. 251 (M.D. Ala. 2004) (Albritton, J.), where plaintiff's claims were not barred by judicial estoppel because he promptly amended his bankruptcy asset schedule upon learning of pre-existing undisclosed claims, prior to any discharge of his debt and while the bankruptcy case remained open. Spann, instead of amending her bankruptcy case to reflect the employment claims she now brings, dismissed the bankruptcy.  If a defense of judicial estoppel would be defeated had Spann amended her bankruptcy schedules, then

22

it is certainly defeated by her dismissal of the
bankruptcy outright.

DynCorp asserts that, although Spann's bankruptcy was
dismissed, she nonetheless benefitted from it through the
automatic stay on collection activity, and that benefit
is an "inequity" that judicial estoppel should bar.  It
is true that a benefit sufficient to trigger judicial
estoppel does not have to involve full discharge of a
party's debts.  "The bankruptcy court may 'accept' the
debtor's assertions by relying on the debtor's
nondisclosure of potential claims in many other ways.
See, e.g., In re Coastal Plains, 179 F.3d at 210 (finding
that judicial acceptance was satisfied when the
bankruptcy court lifted a stay based in part on the
debtor's nondisclosure in its bankruptcy schedules and in
a liftstay stipulation); Donaldson v. Bernstein, 104 F.3d
547, 555-56 (3rd Cir. 1997) (holding that judicial
acceptance was satisfied when the court approved the
debtor's plan of reorganization)."  Hamilton v. State

23

<u>Farm Fire & Cas. Co.</u>, 270 F.3d 778, 784 (9th Cir. 2001).

To be sure, Spann derived the benefit of an automatic stay as a result of her bankruptcy petition; however, that benefit existed irrespective of the claims she listed (or failed to list) in her filings. In this case, the automatic benefit of a stay on collection action prior to dismissal of a bankruptcy case is not a benefit that threatens judicial integrity in a way sufficient to provide a basis for judicial estoppel.

### IV. CONCLUSION

Because Spann did not manipulate the courts, intentionally or otherwise, to gain advantage through inconsistent positions, her claims cannot properly be barred through the application of judicial estoppel.

It is therefore ORDERED that defendant DynCorp Technical Services, LLC's motion for partial summary judgment (Doc. No. 38) is denied.

Done, this the 2nd day of November, 2005.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE